PREMIER PRODUCTS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF WILLIAM D. McCULLOUGH, DECEASED, JOHN J. BROWNE AND JOHN F. LINEHAN, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos 110690, 110691. Promulgated July 21, 1943.

*Briggs G. Simpich, Esq.,* for the petitioners.
*Philip M. Clark, Esq.,* for the respondent.

448

## OPINION.

BLACK, *Judge:* The question involved in these proceedings arises in connection with the excess profits tax imposed by subchapter E of chapter 2 (sections 710 to 752, inclusive) of the Internal Revenue Code, which subchapter may be cited as the "Excess Profits Tax Act of 1940" and was inserted in the Code by Title II, section 201,

of the Second Revenue Act of 1940. It has since been amended by the Excess Profits Tax Amendments of 1941, approved March 7, 1941; by Title II of the Revenue Act of 1941, approved September 20, 1941; and by Title II of the Revenue Act of 1942. These taxes are in addition to the declared value excess profits tax imposed by subchapter B of chapter 2 of the Internal Revenue Code.

Section 710 (a) of the Internal Revenue Code, as amended, imposes the tax on the "adjusted excess profits net income," which term is defined in section 710 (b), as amended, as the "excess profits net income" minus the sum of (1) a specific exemption of $5,000; (2) the "excess profits credit" allowed under section 712, as amended; and (3) the unused excess profits credit. Sections 711 to 720, inclusive, as amended, deal with the determination of the "excess profits net income" and the "excess profits credit" and may generally be regarded as the sections dealing with the "normal" provisions of the act. Then come the sections dealing with abnormalities and special cases.

In the instant proceedings the applicable section of the Internal Revenue Code is section 721, entitled "Abnormalities In Income In Taxable Period." This section, as amended, is applicable to all taxable years beginning after December 31, 1939. The material provisions of section 721, as amended, are in the margin.[3]

---

[3] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:

(A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or

(B) Income constituting an amount payable under a contract the performance of which required more than 12 months; or

(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; or

(D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's accounting period or method of accounting; or

(E) In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease; or

(F) Income consisting of dividends on stock of foreign corporations, except foreign personal holding companies.

All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary.

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval

2 T. C.

At the outset it may be noted that under section 732 (c) of the Internal Revenue Code the determination of the question here involved "shall not be reviewed or redetermined by any court or agency except the Board." The instant question, however, does not arise under section 721 (a) (2) (C) or section 722, and in any event is for a taxable year beginning before December 31, 1941, which makes section 222 (c) of the Revenue Act of 1942 inapplicable. This latter section provides that:

Section 732 (relating to review of abnormalities by the Board) is amended by inserting at the end thereof the following new subsection:

"(d) REVIEW BY SPECIAL DIVISION OF BOARD.—The determinations and redeterminations by any division of the Board involving any question arising under section 721 (a) (2) (C) or section 722 shall be reviewed by a special division of the Board which shall be constituted by the Chairman and consist of not less than three members of the Board. The decisions of such special division shall not be reviewable by the Board, and shall be deemed decisions of the Board."

The parties agree that the proceeds of $100,376.23, less the sum, of the cost of the policies and subsequent premiums paid thereon of $29.298.50, or $71,077.73 were properly included in the gross income of the Products Co. under Code section 22.

Petitioners contend (1) that the net proceeds of $71,077.73, less the income and defense taxes allocated thereto in the amount of $17,-606.03, or $53.471.70, constitute "abnormal income" under section 721 (a) (1); (2) that no amount should be deducted from the abnormal income of $53,471.70 in arriving at the "net abnormal income" under section 721 (a) (3); (3) that all but 3.941 percent of such net abnormal income of $53,471.70 is attributable to previous years under section 721 (b); and (4) that the tax should be recomputed accordingly

of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. * * *

(c) COMPUTATION OF TAX FOR CURRENT TAXABLE YEAR.—The tax under this subchapter for the taxable year, in which the whole of such abnormal income would without regard to this section be includible, shall not exceed the sum of:

(1) The tax under this subchapter for such taxable year computed without the inclusion in gross income of the portion of the net abnormal income which is attributable to any other taxable year, and

(2) The aggregate of the increase in the tax under this subchapter for the taxable year (computed under paragraph (1)) and for each previous taxable year which would have resulted if, for each previous taxable year to which any portion of such net abnormal income is attributable, an amount equal to such portion had been included in the gross income for such previous taxable year.

(d) COMPUTATION OF TAX FOR FUTURE TAXABLE YEAR.—* * *
*       *       *       *       *       *       *

(e) APPLICATION OF SECTION.—This section shall be applied only for the purpose of computing the tax under this subchapter as provided in subsections (c) and (d), and shall have no effect upon the computation of base period net income. * * *

under section 721 (c). We shall consider these four contentions in the order given.

1. In filing its return on Form 1121, which is the United States corporation excess profits tax return prescribed by the Treasury Department, the Products Co. in arriving at its excess profits net income deducted from normal tax net income the amount of $18,494.40 as income and defense taxes under item 4 and the amount of $53,471.70 as "Abnormal income attributable to other years" under item 11. The latter amount represented the net insurance proceeds of $71,077.73 (included as a part of the normal-tax net income) less $17,606.03 which was that part of the $18,494.40 attributable to the net proceeds of $71,077.73. The respondent adjusted the excess profits net income as so reported by petitioner by adding thereto the amount of $53,-471.70 deducted under item 11, with the explanation that "It is held that life insurance proceeds do not constitute abnormal income under Section 721 of the Internal Revenue Code as amended by the Second Revenue Act of 1940."

Section 721 was added to the Internal Revenue Code by section 201 of the Second Revenue Act of 1940 and in its original form relief was limited to income falling within one of the six classes specifically referred to therein. Section 721 was later amended by section 5 of the Excess Profits Tax Amendments of 1941 and by section 221 of the Revenue Act of 1942 to read as set forth in our footnote 3, and to be applicable with respect to taxable years beginning after December 31, 1939. The separate classes of income described in subsection (a) (2) are the same as the original six classes referred to above. Subsections (a) and (b) were a part of the 1941 amendments and subsections (c), (d), (e), and (f) were a part of the 1942 amendments, the latter two subsections being new in the 1942 Act. Subsection (f) has not been printed in the margin because it is entirely foreign to any question we have here. In reporting H. R. 3531 relative to the 1941 amendments back to the House, the Committee on Ways and Means submitted a report (H. R. Rept. No. 146, p. 9, 77th Cong., 1st sess.), a part of which is as follows:

Section 721 of the present law provides relief with respect to certain abnormalities in income in the taxable period. These abnormalities, six in number, are specifically described. * * * It is believed advisable to extend the principle of this section to any abnormal item of income. As the types of abnormal income that may occur cannot be predicted in advance, adequate relief can only be granted by thus extending the scope of this section.

The test of whether an item is abnormal is clarified to provide expressly that if the item includible in the gross income of the taxable year is in excess of 125 percent of the average amount of the gross income of the same class for the four previous years it shall be considered abnormal. If the taxpayer was not in existence for the four previous taxable years, the test period is the period during which it was in existence. An item will also be considered abnormal if it is of a class which the taxpayer normally does not receive.

The Commissioner issued Regulations 109 (Cumulative Bulletin 1941–1, p. 117) relating to the excess profits tax under the Internal Revenue Code as amended by the Second Revenue Act of 1940, which were approved by the Secretary on February 8, 1941. This was prior to the enactment on March 7, 1941, of the Excess Profits Tax Amendments of 1941. On May 3, 1941, T. D. 5045 (C. B. 1941–1, p. 69), amending Regulations 109, was issued by the Commissioner and approved by the Secretary. Section 30.721–1 of Regulations 109, inserted therein by paragraph 18 of T. D. 5045, provides in part as follows:

SEC. 30.721–1. *Abnormalities in income in taxable year.*—Section 721 provides relief where abnormal income (as defined in section 721(a)) for any excess profits tax taxable year is attributable to other taxable years. The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any excess profits tax taxable year (A) if it is abnormal for the taxpayer to derive gross income of such class, or (B) if the taxpayer normally derives gross income of such class but the amount of such income of such class is in excess of 125 per cent of the average amount of the gross income of the same class determined for the four previous taxable years or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence. It is abnormal for a taxpayer to derive income of any class only if the taxpayer had no gross income of that class for the four previous taxable years. * * *

Giving due consideration to the report of the Committee on Ways and Means and the Commissioner's regulations, it is our opinion that the amount of $53,471.70 of net insurance proceeds here involved was "abnormal income" as that term is defined in section 721(a)(1). We think it was abnormal for the Products Co. to derive income of such class. During the entire period of its existence it did not derive any income of this class until the taxable year here involved. It meets the test laid down by the Ways and Means Committee Report as being "of a class which the taxpayer normally does not receive" and the provision of the regulations that "It is abnormal for a taxpayer to derive income of any class only if the taxpayer had no gross income of that class for the four previous taxable years." We hold that the proceeds were abnormal income.

The parties to these proceedings agree that the proceeds in question do not fall within any of the six specific classifications of abnormal income described in section 721(a)(2). This section provides in part that "The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary." In this connection section 30.721–2 of Regulations 109, inserted therein by paragraph 18 of T. D. 5045, provides in part as follows:

SEC. 30.721–2. *Classification of income.*—Section 721(a)(2) (A), (B), (C), (D), (E), and (F) sets forth six separate classes of income. Income which

does not fall within those provisions may be grouped by the taxpayer, subject to approval by the Commissioner on the examination of the taxpayer's return, in such other classes as are reasonable in a business of the type which the taxpayer conducts, and as are appropriate in the light of the taxpayer's business experience and accounting practice.

Since the Products Co. only had one class of abnormal income, namely, life insurance proceeds, there is no necessity in these proceedings for the grouping in such other classes provided for in the regulations above quoted.

2. Petitioners' second contention is that no amount should be deducted from the abnormal income of $53,471.70 in arriving at the "net abnormal income" under section 721 (a) (3). Since the respondent makes no contention that any amount should be so deducted, we hold that the net abnormal income is likewise $53,471.70.

3. The respondent in order to sustain his determinations of the deficiency and transferee liability, respectively, relies primarily on attempting to rebut successfully petitioners' third contention, which is that all but 3.941 percent of the net abnormal income is attributable to previous years under sections 721 (b). Congress has provided that the amount of the net abnormal income attributable to years other than the taxable year "shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary," and in the above mentioned committee report it is noted that:

* * * The mere fact that an item includible in the gross income of the taxpayer is abnormal, or is in excess of 125 percent of the average amount of the gross income of the same class for the test period, does not result in the exclusion of such item from excess-profits net income. It is necessary that the item be found attributable to other taxable years. Consequently, if an increase in business renders an item of income in excess of 125 percent of the income for the test period, the increase in business will not result in such increased income being excluded from excess-profits net income.

Was any part of the net abnormal income of $53,471.70 attributable to other taxable years? Section 30.721–3 of Regulations 109, inserted therein by paragraph 18 of T. D. 5045, provides in part, as follows:

SEC. 30.721–3. Amount attributable to other years.—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributale to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand

for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. *No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.*

\* \* \* \* \* \* \*

Specific methods of treating items of net abnormal income of the six classes specified in section 721 (a) are set forth in sections 30.721–6 to 30.721–11. These methods are to be applied subject to the provisions of this section.

A taxpayer claiming benefits of section 721 shall file with its excess profits tax return a detailed statement in duplicate containing the following information:

(1) the amount and a description of each class of income claimed to be abnormal, and the amount and a description of each item in each such class;

(2) for each class of income claimed to be abnormal, the amount and a description of each item of income of the same class derived during the four taxable years immediately preceding the taxable year, and the aggregate amount of such items for each taxable year;

(3) for each class of income claimed to be abnormal, the amount of net abnormal income, the amount of each item of net abnormal income, and the computations by which these amounts were determined;

(4) the transactions in which each such item had its origin, the method used in allocating such item, the amount allocated to each year, and the reasons therefor; and

(5) all other facts upon which the taxpayer relies.

If any item of income is reasonably classifiable in more than one class, the inclusion of such item in any one of such classes in the statement referred to above shall constitute an irrevocable election by the taxpayer for the purpose of section 721 (a) (2). [Italics supplied.]

One of the tests which the above regulation lays down is that "Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events." Further on, the same regulation provides that "No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income." The net abnormal income here involved is not the result of high prices, low operating costs, or increased volume of sales.

Petitioners contend that under the above regulation all but 3.941 percent of the net abnormal income is attributable to years prior to

1940. They do not contend that any of the net abnormal income is attributable to future years, that is, years after 1940. They point out that the Products Co. acquired the policies on December 3, 1929; that McCullough died on May 30, 1940; that the policies were therefore in effect for a period of 3,831 days; and that 151 days thereof or 3.941 percent fell in the year 1940. Petitioners further point out that the class of abnormal income here in question partakes somewhat of the nature of the class of abnormal income described in section 721 (a) (2) (B), namely, "Income constituting an amount payable under a contract the performance of which required more than 12 months"; and that the method of allocation suggested by petitioners in the instant proceedings is similar to the method of allocation provided for by the Commissioner's regulations under section 721 (a) (2) (B). the particular provision of these regulations being section 30.721–3 of Regulations 109, which was renumbered as 30.721–7 by paragraph 20 of T. D. 5045, and which provides in part as follows:

Amounts payable under a long-term contract falling within the provisions of this section shall be attributed to the taxable years during which expenditures were made on account of such contract in the proportion which the amount of such expenditures made during each such year bears to the total of such expenditures, account being taken of the material and supplies on hand at the beginning and end of each such year for use in connection with the work under the contract but not yet so applied.

It is clear that the $53,471.70 abnormal income here in question is not income from long term contracts described in section 721 (a) (2) (B). Therefore, we think the above regulation relating to long term contracts is entirely inapplicable and was not intended to apply to the sort of abnormal income which we have here. However, notwithstanding the Treasury Regulations do not prescribe a method of allocation to prior years of income of the sort we have here, we think a method of allocation could be found if we should hold that any part of the $53,471.70 abnormal income in question was attributable to prior years. Subsection (b) of section 721, as amended, provides: "The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary." We have already pointed out that the Commissioner, with the approval of the Secretary, has promulgated regulations which contain section 30.721–3 of Regulations 109, inserted therein by paragraph 18 of T. D. 5045, which provides. among other things, that "No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income." We know of no other reason why

any portion of the net abnormal income here in question should be attributed to any previous year and petitioners have not suggested any. In fact, the only reason given by petitioners for attributing any of the net abnormal income to previous years is on the basis of the investment which the Products Co. made in the policies during these previous years, followed by the payment of the annual premiums on the policies to the date of the death of McCullough.

There can be no doubt, we think, that when Products Co. purchased the policies on December 3, 1929, from Reynolds Spring Co. for the sum of $8,400, that transaction was an investment by the taxpayer and falls squarely within the provisions of the Commissioner's regulations which we have just quoted. Were the premiums which Products Co. paid on the policies after acquiring them in order to keep them in force and effect of any different nature from the taxpayer's original investment of $8,400 in the policies? We think not. Following the purchase of the policies in 1929, Products Co. paid premiums aggregating $20,898.50 up to the date of the death of McCullough. These premiums were not deductible from year to year as they were paid by Products Co. because section 24 (a) (4), Internal Revenue Code, which is typical of the statute applying to all the years in which such payments were made, provides:

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

Therefore, since Products Co. could not deduct from its gross income these annual insurance premiums as they were paid, it seems to us that the amounts so paid were clearly additions to the taxpayer's original investment of $8,400 in the two insurance policies. By the time they became payable upon the death of McCullough in 1940 this investment had grown to $29,298.50. This amount subtracted from the proceeds collected by Products Co. in settlement of the policies upon McCullough's death represents Products Co.'s gain from the investment. It seems to us that we can not attribute any of this gain to any previous year in the face of that part of the Commissioner's regulations which we have quoted above. The only way that we would be warranted in deciding otherwise would be to hold that the Commissioner's regulations in this respect are invalid. Congress in section 721 (b) has left to regulations to be prescribed by the Commissioner with the approval of the Secretary the determination of the amount

of the net abnormal income of a taxpayer which is to be attributed to any previous or future taxable year or years. So far as this case is concerned, it affords no basis for disregarding these regulations on the ground that they are not consistent with the law.

We hold, therefore, that no portion of the net abnormal income in question is attributable to any year other than the taxable year. In view of our holding on this point, it becomes unnecessary to consider petitioner's fourth contention, that the tax should be recomputed under section 721 (c).

The determination of the deficiency against Premier Products Co. is approved.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

DISNEY, *J.*, concurs only in the result.