E. T. SLIDER, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5601. Promulgated June 18, 1945.

*D. L. Street, Esq.*, and *Squire R. Ogden, Esq.*, for the petitioner.
*Lester M. Ponder, Esq.*, for the respondent.

OPINION.

MELLOTT, *Judge*: Respondent determined deficiencies in income, declared value excess profits, and excess profits taxes for the calendar year 1940 in the respective amounts of $5,927.73, $3,642, and $3,336.93.

and a deficiency in excess profits taxes for the calendar year 1941 in the amount of $12,237.74. Some of the adjustments to income are not contested.

The questions presented are: (1) Were the taxable proceeds of insurance policies on the life of petitioner's former president accruable as income to petitioner in the year 1939 or the year 1940?

(2) Do the insurance proceeds constitute abnormal income attributable to other years for excess profits tax purposes, so as not to be includible in petitioner's excess profits net income for the year 1940?

There is no dispute as to the facts and we find them to be as stipulated. For the purposes of this opinion they will be summarized.

Petitioner, hereinafter sometimes called Slider, Inc., an Indiana corporation, has its principal office and place of business at New Albany, Indiana. Its returns for 1939, 1940, and 1941 were filed with the collector of internal revenue for the district of Indiana. Its books were kept and its returns were filed on an accrual basis.

For some years prior to 1935, E. T. Slider, individually, had conducted a business of producing sand and gravel and dealing in coal and building materials in New Albany, Indiana. On June 1, 1935, he caused petitioner to be organized and transferred to it all of the assets of his individual business and his interest in nine policies of life insurance on his life, as follows:

| Date of issue | Issuing company | Policy number |
|---|---|---|
| 1920 | Mutual Life Ins. Co. of New York | 2769053 |
| 1899 | Mutual Life Ins. Co. of New York | 965049 |
| 1899 | New York Life Ins. Co | 954743 |
| 1899 | John Hancock Life Ins. Co | 61833 |
| 1903 | John Hancock Life Ins. Co | 110282 |
| 1927 | Aetna Life Ins. Co | W-3492-1 |
| 1917 | Penn Mutual Life Ins. Co | 791119 |
| 1917 | Penn Mutual Life Ins. Co | 788901 |
| 1917 | Penn Mutual Life Ins. Co | 788902 |

The policies had an aggregate cash surrender value of $39,434.74 on the date assigned to petitioner. Thereafter petitioner paid the premiums on the policies, amounting to $15,471.89. Petitioner had no other policy of insurance on the life of any of its officers.

Petitioner was organized with a capital stock of 4,000 shares of no par value. At Slider's direction 3,000 shares were issued to 6 of his children, 840 shares were issued to employees of petitioner, and the remaining 160 shares were issued to him.

Slider was married three times. He had six children by his first wife, from whom he had been divorced. He had one child by his second wife, Rose B. Slider, from whom he was divorced on August 1, 1930, she being awarded a judgment for alimony in the sum of $100,000, payable over a period of years. Some time following

November 5, 1930, Slider and Rose were remarried. Prior to such remarriage, and on November 5, 1930, they entered into an antenuptial agreement under which Slider agreed to pay Rose the balance of $90,000 due on the judgment for alimony and to waive any claim in her estate, in consideration of which she waived any claim of any nature which she might have in his estate. The last payment due on the $100,000 judgment for alimony and under the antenuptial agreement was made on July 27, 1939.

Slider died testate on October 4, 1939. By his will he made certain specific bequests in money to his grandchildren and others; gave Rose B. Slider his home located in Louisville, Ky., on condition that such devise should not modify, in any way, the antenuptial agreement theretofore entered into; gave three grandchildren by the daughter of his second marriage a home in Louisville; and directed distribution of all the residue of his estate to the six children by his first marriage.

Between October 4 and December 31, 1939, the proceeds of the six policies issued by the companies other than the Penn Mutual were paid to petitioner. Those proceeds amounted to $44,496.82, of which amount $24,507.78 was not subject to taxation and $19,989.04 was subject to taxation. In its tax return for 1939 petitioner did not include the sum of $19,989.04 in its income for that year. Subsequently, and on April 16, 1941, petitioner filed an amended return, including in its income for 1939 the said sum of $19,989.04. This amount or the tax thereon is not presently in issue.

Petitioner filed proofs of loss with the Penn Mutual Life Insurance Co. (hereinafter referred to as Penn Mutual), which had issued policies 791119, 788901, and 788902, assigned to petitioner in 1935. Prior to the payment of these three policies, counsel for Rose B. Slider sent a telegram to Penn Mutual on November 1, 1939, asking for advice as to the present beneficiaries of them. This information was forwarded on the same date. On November 3, 1939, counsel for Rose wrote Penn Mutual that "our preliminary investigation in connection with this matter, * * * justifies our present position in presenting to you this claim in behalf of our clients, for the proceeds of the policies issued by your company and to insure the legality of the assignments which you advise were made July 15, 1935." The letter concluded with the request "that payment of the proceeds of these policies be withheld until further investigation can be completed by us" and that "In the interim you may consider this a formal demand on your company in behalf of Mrs. Slider, Mr. Slider's widow, and Margaret Slider Bruckert,[1] his daughter, for the proceeds of the policies referred to in our first communication to you."

On November 8, 1939, Penn Mutual advised its general agency at Louisville, Kentucky, A. W. Finley & Co. (hereinafter referred to as

[1] The second and third names were incorrectly reversed in the letter.

Finley) that satisfactory proofs of loss in connection with the claim under the three policies had been made, but that in view of the conflicting claim which had been filed by counsel on behalf of the wife and daughter of the insured with respect to the proceeds Penn Mutual was withholding settlement of the claim "for the time being." It also suggested to Finley that efforts be made to work out some amicable settlement "between these conflicting claimants" and directed that it be explained to the claimants "in cases of this nature the company becomes a mere stakeholder," with the result that "if a settlement cannot be agreed upon, the only course open for the company would be to interplead, pay the money to the court and thereby secure a full legal release."

On November 13, 1939, the attorney for petitioner wrote to Finley suggesting "that your company should continue to retain the funds until such time as we may demand them on behalf of E. T. Slider, Inc." On November 15, 1939, Penn Mutual advised Finley by letter that it would withhold any legal action pending a determined attempt between respective counsel "to straighten out the conflicting claims of the corporation and the divorced wife." Subsequently, correspondence ensued between counsel for E. T. Slider, Inc., Penn Mutual, and Finley with respect to petitioner obtaining the proceeds of the three policies under a penalty bond, and on January 8, 1940, counsel for E. T. Slider, Inc., wrote to Finley, stating that its officials were undecided on that date whether to incur the expense of giving a bond and paying the premium incident thereto in order to receive payment of the proceeds of the three policies. In this letter Penn Mutual was requested to advise whether it would agree to hold the proceeds and pay 3 percent interest thereon upon the commitment of the named beneficiary to leave the funds with it for a period of not less than six months.

On January 16, 1940, Penn Mutual wrote a letter to Slider, Inc., indicating its willingness to hold the proceeds and pay 3 percent interest thereon for a period of not more than six months from January 15, 1940. On January 19, 1940, counsel for the corporation requested that the proceeds be retained for the six-month period. On June 26, 1940, Penn Mutual extended the interest period for an additional six months from June 15, 1940.

On August 2, 1940, Rose B. Slider filed a suit in the Jefferson Circuit Court at Louisville, Kentucky, alleging, *inter alia*, that the transfers of personal property by Slider to the six children of his first marriage, including the transfer to them of stock of petitioner, were made fraudulently for the purpose of depriving her of her dower and distributable share in his estate. This case was never tried, but was settled. Pursuant to agreement of the parties, a judgment was entered on November 12, 1940, under which Rose recovered the sum of $20,000 and Margaret Slider Rathert (formerly Bruckert) recovered the sum

of $10,000 from the executors of Slider's estate. This judgment stated that Rose and Margaret "have no other claims against  *  *  *  [the] executors  *  *  *  or against any part of the estate,  *  *  *  or against any person named as a defendant  *  *  *  or against any corporation in which E. T. Slider, or any one or more of the defendants were interested  *  *  *, or in the proceeds of any policy of insurance issued on the life of Edward T. Slider."

After the entry of the judgment on November 12, 1940, and prior to January 1, 1941, Penn Mutual paid petitioner the proceeds of the three policies, aggregating $61,956.58, of which amount $31,557.73 was subject to taxation. In its return filed for 1940, petitioner included the sum of $31,557.73 as income accrued and taxable in that year. Petitioner, on its books and records, did not accrue the said sum of $31,557.73 in 1939 and did not include said sum as income accrued in 1939 in either its return or amended return for that year.

The Commissioner determined that the $31,557.73 referred to in the preceding paragraph was accruable as income to the petitioner in the year 1940. He also determined that the insurance proceeds do not constitute abnormal income attributable to other years for excess profits tax purposes and hence that they are properly includible in petitioner's excess profits net income for the year 1940. The petition alleges that these determinations were erroneous.

The controlling legal principles of accrual of income are not in dispute. Both parties quote from the opinion of the Circuit Court of Appeals for the Ninth Circuit in *Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932, affirming 34 B. T. A. 677, in which it was stated that "income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent." See also *Burnet* v. *Logan*, 283 U. S. 404; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85, affirming 20 B. T. A. 772; *Estate of G. A. E. Kohler*, 37 B. T. A. 1019, and the other cases cited in the *Liebes* case.

Respondent contends that the facts under which the proceeds of the policies were retained by Penn Mutual and not paid to petitioner until the adverse claims of the widow and daughter had been settled brings this case squarely within the language of the Supreme Court of the United States in *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. In that case one of the questions was whether a taxpayer on the accrual basis could deduct amounts which it had deposited with a third party and accrued as taxes while at the same time it was contesting its liability for the taxes. In holding that the taxpayer was not entitled to the claimed deductions, the Court said:

It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this

principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting. * * * See also *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516.

Petitioner contends that, when Slider died in 1939, it acquired a fixed and unconditional right to receive the proceeds of the three policies; that it was certain in 1939 this right would be realized and the proceeds would be paid to it; and that, consequently, immediately upon the death of Slider it had the right, and was under the legal duty, to accrue the taxable portion of the proceeds in the amount of $31,557.73. It urges that Rose B. Slider at no time had any legal and valid claim to, or interest in, the proceeds of the policies; that her claim had no foundation and was nothing more than a "nuisance claim"; and that the refusal of Penn Mutual to pay the proceeds to it in 1939 merely because of a "nuisance claim" can not militate against its right to accrue the income in that year.

We are not impressed by petitioner's characterization of the claim of the widow and daughter as a "nuisance claim." Even if it be assumed that it had no legal foundation, it nevertheless constituted a claim which Penn Mutual could not overlook; and, as long as it remained in existence, Penn Mutual refused to pay the insurance proceeds to petitioner unless it furnished a penalty bond in a substantial amount. On December 9, 1939, the attorney for petitioner wrote to the agent for Penn Mutual, complaining about the fact that Penn Mutual wished the penalty of any bond which should be given to be $85,000 rather than $62,000, apparently the amount due under the policies. In this letter it was stated:

The only claim being advanced on behalf of the widow, Rose B. Slider, and her daughter, Margaret Slider Bruckert, is that the change of beneficiaries of the policies was not valid because E. T. Slider did not have mental capacity to make those changes at the time they were made. E. T. Slider had six children by his first wife, and the one child, Margaret Slider Bruckert, by Rose Slider.

If, in any litigation, Rose Slider is successful in setting aside the change in the beneficiaries of the policies, the result would be that she would be entitled to the proceeds of the policies as follows:

| Policy No. | | Amount | Rose Slider |
|---|---|---|---|
| 788901 | _____ | $10,000 | $10,000 |
| 788902 | ½ of_____ | 10,000 | 5,000 |
| 791119 | ½ of_____ | 25,000 | 12,500 |
| | | | $27,500 |

Under the circumstances, it would seem to appear, therefore, that a bond in the penal sum of $62,000 would be ample to protect the Penn Mutual Life Insurance Company.

The agent forwarded this letter to Penn Mutual and under date of December 15, 1939, the company wrote him in part as follows:

The proceeds total $62,000 approximately and the payment of this sum to the E. T. Slider Corporation would in our opinion place upon the Penn Mutual the

responsibility for the entire amount paid. Since it is never beyond the realm of possibility to anticipate attorneys' fees and interest charges in any subsequent litigation, we naturally feel that the penalty of the bond is not excessive. As we pointed out in our letter of December 1st, the difference between the net proceeds and $85,000 would hardly cover interest at 6% from [sic] 6 years and many of these cases have been known to continue for an unbelievable period.

These two communications indicate that at the close of 1939 the claim of Rose B. Slider was not being treated lightly and that there appeared to be a real basis upon which the officers of petitioner, in good faith and in the exercise of their best judgment, could entertain doubt that at that time its right to receive the insurance proceeds was "fixed and unconditional." That they did entertain such doubt is evidenced by their failure to accrue the taxable portion as income in 1939 either on the books of the corporation or in its returns for that year. Moreover, in the corporate resolution of petitioner, adopted in connection with the settlement of the claims of the widow and daughter, it is recited that "Rose B. Slider had attached and compelled the Penn Mutual Insurance Company of Louisville, Kentucky to withhold the premiums and interest on three insurance policies made payable to E. T. Slider, Incorporated, as beneficiary, amounting to $63,495.14." While this statement was probably inaccurate, since there is no evidence that an attachment of the policies or proceeds had actually been made, it is, nevertheless, some indication that the corporation's officers and directors had, in good faith, entertained substantial doubt, in 1939, that the proceeds would be received. Under the circumstances, therefore, it can not be held that they improperly refrained from accruing the amount in 1939.

Passing the question, which has been suggested in some cases, whether the taxpayer should be bound by the treatment it has accorded the income, cf. *J. E. Farrell*, 45 B. T. A. 162, 169; affd., 134 Fed. (2d) 193, and recognizing, as petitioner points out upon brief, that no estoppel has been pleaded or proved, the fact nevertheless remains that those in the best position to appraise the situation—the petitioner's officers, accountant, and directors—all obviously concluded that collectibility of the amount was sufficiently doubtful to justify the corporation in refraining from including the amount in income in 1939. We, of course, agree with counsel for petitioner that the fact that a taxpayer might make an error in accruing income in a wrong year does not preclude it from accruing it in the proper year. We even accept as neutral the circumstance that if we now hold that the income was properly accruable in 1939 petitioner apparently escapes tax altogether upon it; for that year does not seem to be open—at least it is not before us—and the amount was not included in gross income in the amended return. Our conclusion that the income was properly included by the respondent in taxpayer's gross income for the year 1940 rests entirely upon well established principles of accounting and

upon the rationale of the cases heretofore cited. Income "should be accrued and reported \* \* \* when its collectibility is assured." *Clifton Mfg. Co.* v. *Commissioner*, 137 Fed. (2d) 290. That, in our judgment, did not occur under the presently stipulated facts until 1940. It follows that the respondent committed no error in including the amount in issue in petitioner's gross income for that year. Cf. *London-Butte Gold Mines Co.*, 41 B. T. A. 852; affd., 116 Fed. (2d) 478.

The remaining question, as stated at the outset, is whether the taxable proceeds of the three insurance policies constitute abnormal income attributable to other years for excess profits tax purposes so as not to be includible in excess profits net income in the computation of petitioner's excess profits taxes for the year 1940.

Petitioner contends that, for excess profits tax purposes, the taxable portion of the insurance proceeds, $31,557.73, should be allocated to 1939. In support of this contention petitioner urges that this amount constituted abnormal income under section 721 of the Internal Revenue Code, which provides that "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year if it is abnormal for it to derive income of such class. Respondent concedes that the insurance proceeds constituted income "abnormal" to petitioner. He contends, however, that, in order for such income to be excludible from excess profits net income under section 721, it must also be "attributable to other years."

Both parties cite and discuss *Premier Products Co.*, 2 T. C. 445. In that case an officer of a corporation died on May 30, 1940, and the proceeds of insurance policies on his life were paid to petitioner corporation in 1940. The Commissioner included these proceeds in the taxpayer's excess profits net income for that year, and it contended that a substantial portion of them constituted net abnormal income attributable to other years. In deciding for the Commissioner it was pointed out that Congress had specifically provided that the amount of net abnormal income attributable to years other than the taxable year should "be determined under regulations prescribed by the Commissioner with the approval of the Secretary." The applicable portion of these regulations (section 30.721-3 of Regulations 109, inserted therein by paragraph 18 of T. D 6045, 1941-1 C. B. 69) is shown in the margin.[2]

---

[2] SEC. 30.721-3. **Amount attributable to other years.**—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. To the extent that any items of net abnormal income in the

Conclusion was reached in the *Premier Products Co.* case that there was nothing in the regulations to support the contention that some portion of the net abnormal income was attributable to previous years. Petitioner attempts to distinguish that case from the instant one on the ground that in the former the corporation officer had died in 1940 and the payment of the proceeds had occurred in the same year, while here the death occurred in 1939, the proceeds were paid in 1940, and all the premiums had been paid prior to the passage of the excess profits tax act in 1940. This distinction does not justify a different conclusion here. The proceeds of the three insurance policies with which we are now concerned were not accruable as income until 1940. They are therefore "attributable" only to the year 1940 and not "to other years." Following *Premier Products Co., supra,* it is held that the proceeds of the three policies are not abnormal income "attributable to other years" and respondent committed no error in refusing to exclude them from excess profits net income for the year 1940.

The deficiency in excess profits tax for 1941 is not discussed by the parties, but seems to follow from uncontested adjustments and approval of respondent's determination for 1940. We have no jurisdiction in connection with the overassessments in income tax and declared value excess profits tax for the year 1941 set out in the notice of deficiency. The deficiency in excess profits tax for that year is approved. *Decision will be entered for the respondent.*

---

taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.

\*       \*       \*       \*       \*       \*       \*

Specific methods of treating items of net abnormal income of the six classes specified in section 721 (a) are set forth in sections 30.721–6 to 30.721–11. These methods are to be applied subject to the provisions of this section.

A taxpayer claiming the benefits of section 721 shall file with its excess profits tax return a detailed statement in duplicate containing the following information:

(1) the amount and description of each class of income claimed to be abnormal, and the amount and description of each item in each such class;

(2) for each class of income claimed to be abnormal, the amount and a description of each item of income of the same class derived during the four taxable years immediately preceding the taxable year, and the aggregate amount of such items for each taxable year;

(3) for each class of income claimed to be abnormal, the amount of net abnormal income, the amount of each item of net abnormal income, and the computations by which these amounts were determined;

(4) the transactions in which each such item had its origin, the method used in allocating such item, the amount allocated to each year, and the reasons therefor; and

(5) all other facts upon which the taxpayer relies.

If any item of income is reasonably classifiable in more than one class, the inclusion of such item in any one of such classes in the statement referred to above shall constitute an irrevocable election by the taxpayer for the purpose of section 721 (a) (2).