*The Court's order will be entered accordingly.*

ROCHESTER BUTTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4472. Promulgated August 13, 1946.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

534

OPINION.

OPPER, *Judge*: As in *W. B. Davis & Son, Inc.*,[1] *W. B. Knight Machinery Co.*,[2] and *Southwestern Oil & Gas Co.*,[3] this proceeding involves the application of section 721 (a) (2) (C), dealing with income in excess profits tax years resulting "from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months."

Petitioner asserts that under section 721 (b) part of its income was "net abnormal income" "attributable to" "previous" "taxable years" by reason of the program of investigation and development of new types of buttons and button material which it carried on during earlier periods. It does not claim this as an abnormal type of income, but as exceeding by more than 25 per cent the income of base years.[4] From these premises it concludes that under section 721 (c) its tax should be so reduced as not to exceed the tax computed without the inclusion of such net abnormal income except to the extent of the increase in tax which would have resulted if the income had been received in the prior years to which it is attributed.[5]

---

[1] 5 T. C. 1195.

[2] 6 T. C. 519.

[3] 6 T. C. 1124.

[4] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section.

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years * * *.

[5] SEC. 721. * * *

* * * * * * *

(c) COMPUTATION OF TAX FOR CURRENT TAXABLE YEAR.—The tax under this subchapter for the taxable year, in which the whole of such abnormal income would without regard to this section be includible, shall not exceed the sum of :

(1) The tax under this subchapter for such taxable year computed without the inclusion in gross income of the portion of the net abnormal income which is attributable to any other taxable year, and

(2) The aggregate of the increase in the tax under this subchapter for the taxable year (computed under paragraph (1)) and for each previous taxable year which would

It is apparent at the outset that little persuasive force derives from respondent's contention that this was not abnormal income as applied to petitioner. The term "abnormal" when used in section 721 is not to be restricted to its ordinary or usual meaning. The statute carries, in addition, at least as to income abnormal in size, its own definition of that word, and whether a taxpayer measures up to its terms is a conclusion to be gathered solely from the standards set forth in the act itself. "* * * the statute means just what it says—that any income of the type or class specified in subsection (a) (2) of section 721 is to be recognized in applying the relief measures which the statute grants." *W. B. Knight Machinery Co., supra*, 532. It seems to us to make no difference whether, as respondent contends, petitioner was habitually and continuously engaged in experimentation and research. If in the tax year the income it enjoyed as the result of prior activities in this field was more than 25 per cent greater than that for the base years, the necessary condition has been met.

This preliminary proposition, however, leads to a further problem. Because petitioner's experimentation resulted in the development of several distinct products and because only as to some is the 125 per cent formula applicable, a different mathematical result is said to follow depending upon whether we accept respondent's contention that all items must be considered together since they fall into the same statutory class (Regulations 109, sec. 30.721–1), or whether each item which exceeded the 125 per cent is made the basis of relief without consideration for those which fall below. See Mertens, Law of Federal Income Taxation, vol. 7A, p. 187. The detailed facts of petitioner's claim in this respect are set out in our findings and need not be repeated. In general, they show that "Robulith," "Duo-Horn," "Technoid" (wash) and "Niesac" have the required excess for exclusion from excess profits income, whereas in the case of "Technoid" (mottled) the amount received in the excess profits tax year fell below 125 per cent of the base years by approximately $19,000. From this petitioner argues that the exclusion, roughly $300,000, should be the total shown for the four items first listed, whereas respondent insists that the $19,000 should be deducted and the remaining net excess from the whole class, approximately $281,000, measures the outer limit of permissible relief.

The statutory formula for making the determination presently involved seems to emerge with sufficient clarity from a consideration of the various provisions. First, the term "abnormal income" is defined in subdivision (a) (1) as "income of *any class* includible in the

have resulted if, for each previous taxable year to which any portion of such net abnormal income is attributable, an amount equal to such portion had been included in the gross income for such previous taxable year.

gross income of the taxpayer for any taxable year," and as applied to the present controversy it is limited to "income of *such class* includible in the gross income of the taxable year [which] is in excess of 125 per centum of the average amount of the gross income of *the same class* for the four previous taxable years." (Emphasis added.) Under subdivision (a) (2) "Each of the following subparagraphs shall be held to describe a separate class of income," and the "class" with which we are here concerned is, as we noted at the outset, "Income resulting from exploration, discovery, prospecting, research, or development of * * * patents, formulae, or processes, or any combination of the foregoing."

The only amount with respect to which relief is granted is the "net abnormal income" which "means the amount of the abnormal income less * * * (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1) * * *."

We see no escape from the conclusion that in arriving at the amount for which petitioner is entitled to relief both the abnormal income and the net abnormal income must be computed by reference to each "separate class of income." Nowhere does the legislation refer to individual items within a class. The abnormal income is defined only by reference to the total derived from any class. When all the provisions are read together, the difficulty becomes apparent of attempting to determine the amount of the disputed income for the taxable year, the corresponding income for the base years, the abnormal income, or the net abnormal income, without in each case including one indivisible figure for the total amount falling into the description of a specific class.

Perhaps the difficulty would appear less formidable if we were here dealing with a claim that type, rather than size, of the income was abnormal; for it seems evident from the terms of the act that in a situation of that sort, if it were normal for the taxpayer to have any income whatever which falls within the description of a particular class, the applicability of the section would automatically disappear. See *Premier Products Co.*, 2 T. C. 445, 453; *W. B. Davis & Son, Inc.*, *supra*. It may be for that very reason that petitioner inferentially concedes that this is not an abnormal type case, since it was not abnormal for it to have some income falling within the described class. But it seems to us that equally in the instance of abnormality based on size, as in the present case, the test must be a comparable one; and the 25 per cent leeway must be applied to the class as a whole, precisely as the type-of-income test would be similarly applied were the claim based upon that phase of abnormality.

On this aspect of the controversy we view respondent's position as correct.

This conclusion leads in turn to a further question. Since the abnormal income consists of the excess over 125 per cent of similar income enjoyed in the four base period years, respondent insists that it was petitioner's burden to show its total income from all sources within the specified class for the base period and that it has failed to carry that burden. While we agree that the showing is necessary, we think it has been adequately made. The record leaves something to be desired, but it is easy to understand that a taxpayer's books are not kept with prophetic vision as to the future requirements of income tax legislation. The source of petitioner's income from the sales of its products has been stipulated. The products and a general description of their origin likewise appear. It is sufficiently evident from the record as a whole what part of petitioner's income can be said to have arisen out of processes for which it was primarily responsible. At least the facts have achieved that completeness where the burden of going forward with any possible contradictory material reasonably fell upon respondent.

Three additional questions remain for disposition. The first is the amount of "any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived." [6] No evidence dealing specifically with this requirement of the statute was produced, and on that premise respondent contends that petitioner's claim must be disallowed in full for failure of proof. Here again, the record leaves much to be desired, but there is evidence from which we think the necessary computation can be made. Cf. *Cohan v. Commissioner* (C. C. A., 2d Cir.), 39 Fed. (2d) 540. Cost of goods sold has already been eliminated by the method of arriving at the gross abnormal income. In addition, under the head of "Selling" expense petitioner has shown its total costs (approximately $383,500) of making sales for the year in question. See Seghers "What Price Section 721 Relief," Taxes, Oct. 1944, pp. 434, 436; Barlow & Elpern "Abnormal Income from Research & Development," Taxes, May 1946, pp.

---

[6] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

* * * * * * *

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

448, 458. We may assume that these are the over-all direct costs applicable generally to the disposition of all of petitioner's products, and it appears reasonable that through some portion of their expenditure the abnormal income was in whole or in part derived. In the absence of a more accurate standard, we are driven to the assumption that this amount is directly attributable to the collection of the abnormal income in the same proportion that the abnormal income bore to petitioner's total gross merchandising profit for the year, a figure for which appears in our findings of fact. No other "direct" costs seem to be involved. Cf. *W. B. Davis & Son, Inc.*, *supra*. The necessary detail of calculation can be incorporated in the recomputation under Rule 50.

The second remaining question deals with the proposition that "we know that no part of such [abnormal] income can be so attributed [to other years] which was due solely to improvement in business conditions." *W. B. Knight Machinery Co.*, *supra;* see also *Southwestern Oil & Gas Co.*, *supra*. Although in the *Knight* case the factor representing the profit due to improvement in business was stipulated, here the parties do not agree upon it, and it must, if supplied at all, be found from the facts in evidence. There can be little doubt that, knowing all the factors, a consideration of so general a nature would still necessarily reduce in the last analysis to a matter of opinion. The present record shows, in addition to the products which were the outgrowth of petitioner's research, the sales history of standard vegetable ivory buttons dealt in regularly and consistently for a number of years. The average dollar amount of the annual sales of this button for the four base period years compared to the sales of the same button for the year in issue will give a factor of increase which seems to us the nearest to accuracy which can be elicited under the present circumstances. Only the remaining proportion of the figure arrived at for net abnormal income may be attributed to other years and hence form the basis for permissible relief. *W. B. Knight Machinery Co.*, *supra*. Any other increase in income or reduction in costs apparently need not concern us here. *Southwestern Oil & Gas Co.*, *supra*. As on the previous point, the necessary computation may be carried out under Rule 50.

Finally, there is the problem of allocating the resulting abnormal income among the respective prior years. In *W. B. Knight Machinery Co.*, *supra*, the record showed a continuation of the research on petitioner's existing machine models into the tax year under consideration and for that reason some of the abnormal income was attributed to that year. Here in every case the research was completed prior to the present tax year. The evidence indicates that petitioner's research which resulted in the products with respect to which relief is being

granted commenced in about 1931. In each of the ten years beginning in 1931, and prior to the year in issue, petitioner undertook expenditures for "experimental and research" purposes, the several amounts of which are set forth in our findings of fact. Although it is not apparent that the result would be materially different if some other method were employed, we take the view that under the present circumstances the income attributable to prior years should be divided among the ten years mentioned—1931 through fiscal 1940—in the same proportion that the respective annual expenditures in question bear to the total of the same expenditures for all of those years. See *W. B. Knight Machinery Co., supra.*

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*