SWOBY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10284.   Promulgated January 20, 1948.

*Daniel B. Priest, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

#### SUPPLEMENTAL OPINION.

OPPER, *Judge*: When this proceeding was originally decided (9 T. C. 887), an issue concerning the asserted abnormality of certain income for excess profits tax purposes was disposed of in respondent's favor for failure of proof. Petitioner's motion to introduce further evidence has now been granted and the reopening of the case and this further opinion are the result.

It now appears that the item in question—payment to petitioner by its lessee for the privilege of canceling a sublease for which petitioner's consent was necessary—was the only item of its kind, and hence the factual basis for invoking section 721 (a) (2) (E), Internal Revenue Code,[1] if it is otherwise applicable, has been furnished.

We are, however, compelled to adhere to our original conclusion. Petitioner's situation does not fall within the terms of the section. Although it is a "lessor," the payment was "included in gross income" by reason of the termination of a sublease, rather than of "the lease." Use of the definite article would seem to import a reference to a particular lease and presumably to the one under which the taxpayer is the "lessor."

It may be, however, that the language of the section is not so clear as to preclude resort to its legislative history for clarification of the congressional purpose. If so, the same conclusion is merely reenforced. When originally submitted as a part of the Senate bill the language [2] was evidently designed to meet situations created by application of the principle of *Helvering* v. *Bruun*, 309 U. S. 461. In conference the

---

[1] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

\* \* \* \* \* \* \*

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:

\* \* \* \* \* \* \*

(E) In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease; \* \* \*

[2] "Income received by the lessor of real property on the termination of the lease as a result of improvements on the property during the lease."

provision was broadened to its ultimate form "so as to include *all* income arising from *such* source and not merely income occasioned by improvements on the property during the term of the lease." (Emphasis added.) Conference Report, H. Rept. 3002, 76th Cong., 3d sess., pp. 50, 51. While the form of the receipt contemplated was thus broadened, and a cash payment received by a lessor upon a premature termination of the lease to which he is a party would thus apparently be reached, cf. *Hort* v. *Commissioner*, 313 U. S. 28, no purpose is indicated to extend the type of relationship beyond that envisaged by the original Senate provision.

There is an additional fatal weakness in petitioner's case. Even though the income be considered abnormal, it must be attributable to other years before relief can be granted. *Premier Products Co.*, 2 T. C. 445; *E. T. Slider, Inc.*, 5 T. C. 263. Respondent's regulations applying that provision, quoted with approval in the cases cited, include the requirement that "Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events." Regulations 112, sec. 35.721–3. No basis appears and none is suggested for the allocation of any part of the payment in question to other years in order to meet these requirements.[3] Respondent's action in this respect is sustained.

The parties have now further stipulated that petitioner's transferor in a section 112 reorganization had a basis for determining loss upon sale or exchange of the property, received by petitioner and included in its invested capital, of $52,500. This accords with the amount determined by respondent in the original deficiency notice and accordingly the adjustment suggested as a possibility in the prior opinion now appears to be unwarranted.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

VAN FOSSAN and JOHNSON, *JJ.*, concur only in the result.

ARUNDELL, *J.*, dissents.

---

[3] It might well be that a payment made to a lessor to obtain the premature cancellation of a lease would represent anticipated future income, see *Hort* v. *Commissioner, supra*, and hence be appropriately allocable to the remaining years of the lease term. See Regulations 112, sec. 35.721–9. But here, no diminution in petitioner's anticipated revenue from its lease is foreshadowed.