HARRIS HARDWOOD COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4424. Promulgated April 24, 1947.

*H. F. Hinderer, C. P. A.,* for the petitioner.
*Edward L. Potter, Esq.,* for the respondent.

878

## OPINION.

ARNOLD, *Judge*: The first issue involves an expenditure of $2,765.29 which the respondent capitalized and which petitioner contends is a 1941 expense item. The testimony is specific that the $2,765.29 was charged as an expense item against 1940 income and deducted on petitioner's 1940 income tax return. Clearly petitioner is not entitled to deduct the expenditure in both taxable years as an expense item. The evidence does not convince us that petitioner is entitled to deduct any part of the $2,765.29 as an expense item chargeable against 1941 income.

The second issue is an alternative to the first.[1] It raises for the first time the question of whether petitioner is entitled to a loss deduction in 1940 under section 23 (f) of the code. The pleadings, as shown in footnote 1, allege the amount of the loss sustained to be $2,765.29. There is no allegation that the loss was in excess of that amount. The petitioner contends in its brief that "* * * damage existed in an amount greater than the dirt fill cost [i. e., $2,765.29] and the allowance of such damage would stand on its own basis and not as an alternative." By this argument we understand petitioner to contend that, regardless of its allegation of error as to the amount of its 1940 flood damages, or lack of a proper allegation, it is entitled to deduct as a loss the amount of damages proved by the evidence adduced. Petitioner contends that it has proved damages to its permanent structures or improvements aggregating $5,300 or more. It offered the testimony of its superintendent at its Roanoke plant and its general superintendent, both of whom testified in detail with respect to the damages suffered by the various structures and improvements at petitioner's plant. The witnesses estimated that the aggregate cost of repairing and restoring the improvements to their former usefulness would be between $5,300 and $8,000. We have found from their testimony that the *unrepaired* flood damage to petitioner's plant at the end of 1940 was estimated to be at least $5,000. We were unable to find as a fact that petitioner sustained a loss by flood of $5,000.

We are, however, convinced that petitioner sustained a loss from the

---

[1] The allegation in the petition reads as follows: "If said expenditure of $2,765.29 be not allowable as an ordinary and necessary expense of 1941, then 1940 income should be reduced by a casualty loss of equal amount by reason of the Roanoke River flood which occurred in that year and which made this expenditure necessary."

flood and that no loss deduction has been claimed or allowed in determining its 1940 income tax liability. Our problem is to determine the amount of the loss. In determining the amount of the loss we must examine the evidence in the light of the limitation contained in the pleadings that the loss sustained was $2,765.29. We are convinced that at least this amount of loss was sustained. The testimony aforementioned and petitioner's 1940 tax return support this determination, the latter showing that petitioner's undepreciated cost of permanent structures was far in excess of the claimed loss. Considering all the facts and circumstances herein, we are of the opinion, and hold, that petitioner is entitled to a loss deduction in 1940 of at least $2,765.29. The identity in amount of the loss deduction with the expense deduction claimed in the first issue is a mere coincidence, due to the manner in which issues involving entirely different sections of the code were pleaded.

The next issue is whether in computing petitioner's excess profits tax for 1940 it is fully taxable on a group life insurance dividend in the amount of $1,483.56, or only a portion thereof. Petitioner would prorate the 1940 dividend between the taxable years 1939 and 1940. It points out that if the 1940 dividend is prorated mathematically to the *policy* years, which are different from the calendar years, the amount eliminated from 1940 excess profits tax net income would total $999.88. Petitioner's argument ignores the provision of its group life insurance policy providing for payment of dividends which is set forth in our findings. By the terms thereof the board of directors of the insurance company was required *annually* to ascertain and apportion the divisible surplus accruing upon the policy at the end of each policy year. The amount of the dividend so ascertained and apportioned by the insurance company to petitioner for 1940 was $1,483.56. As no dividends were received on the policy in 1939, it must be presumed that there was no divisible surplus accruing on the policy during that year. Under the specific terms of the insurance policy and the facts of record, we would not be justified in holding that part of the 1940 dividend could be apportioned to any other taxable year. On this point we sustain the respondent.

As an alternative to proration petitioner contends that $1,247.06 of the dividend should be eliminated upon the ground that it is abnormal in amount. Abnormalities in income for the taxable year 1940 are defined in section 721, Internal Revenue Code, as amended, the pertinent portions of which are set forth in the margin.[2] Our findings

---

[2] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer nor-

show that it was not abnormal for petitioner to receive income of this class. It had contracted therefor, and under the terms of the insurance policy it had derived income therefrom in 1937 and 1938. Clearly there was no abnormality with respect to the *kind* of income. The second portion of the definition of abnormal income relates to the *amount* of income in such class which is in excess of 125 per cent of the average amount for the four previous taxable years. This excess amount is specifically defined as abnormal income by section 721 (a). Our findings show the income derived from dividends on the group policy for the four years previous to the taxable year 1940. By following the statutory formula the amount of abnormal income can be determined. Determination of the amount of abnormal income is of no benefit to petitioner, however, unless it can show that a part or all thereof is excluded from excess profits net income for the reason that it is attributable to years other than the year in which the excess profits tax is being computed. Sec. 35.721–3, Regulations 112,[3] promulgated pursuant to the provisions of section 721 (b) of the code. Since petitioner has not shown that any part of this abnormal income is attributable to prior years, we must affirm respondent's determination that no part of the dividend is excludible for excess profits tax purposes. *Premier Products Co.*, 2 T. C. 445; *E. T. Slider, Inc.*, 5 T. C. 263; cf. *Arrow-Hart & Hegeman Electric Co.*, 7 T. C. 1350.

The next issue involves adjustments to petitioner's excess profits net income for base period years under section 711 (b) (1) (J) (ii). Section 711 of the Internal Revenue Code relates to excess profits net income. Subsection 711 (a) provides that for any taxable year beginning after December 31, 1939, the excess profits net income shall be the normal tax net income except for adjustments not here material. Subsection 711 (b) relates to the taxable years in the base period, and paragraph (1) thereof states that for any taxable year subject to the Revenue Act of 1936 the excess profits net income shall be the normal

---

mally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

\* \* \* \* \* \* \*

(b) Amount Attributable to Other Years.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. \* \* \*

[3] Sec. 35.721–3. Amount Attributable to Other Years.—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

\* \* \* \* \* \* \*

tax net income. For any other taxable year beginning after December 31, 1937, and before January 1, 1940, the excess profits net income shall be the special class net income defined in section 14 (a) of the Revenue Act of 1936. In either case adjustments are to be made as provided for in the several subparagraphs to section 711 (b) (1). Subparagraph (J), relating to abnormal deductions, and subparagraph (K), which sets forth the rules for applying (J) and subparagraphs (H) and (I), are controlling here, and the pertinent portions thereof are set forth in the margin.[4]

Respondent does not object to the amounts claimed as excessive for the taxable years in the base period with respect to unemployment compensation payments and dues and subscription payments, or interest payments. He contends that petitioner's business was growing during the base period years and the taxable years, that the evidence does not show the excessiveness of the deductions was not the consequence of an increase in gross income, and that the petitioner has not established that the abnormal deductions were not the consequences of a change in the type, manner of operation, size, or condition of the business in which it was engaged. Respondent contends further with respect to the unemployment compensation payments that this item should be classified with other deductible taxes in determining a proper class of abnormal deductions under section 711 (b) (1) (J) of the code and section 35.711 (b)-2 of Regulations 112.

In making our findings of abnormalities in unemployment compensation payments and dues and subscription payments in the base period years we have carefully considered and weighed respondent's contentions. But we can not agree that the abnormal deductions found herein for certain of the base period years were "the consequence of one of the changes mentioned in the statute." *Wentworth Manufactur-*

---

[4] Sec. 711 (b) (1) (J). Abnormal Deductions.—Under regulations provided by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

(K) Rules for Application of Subparagraphs (H), (I) and (J).—For the purposes of subparagraphs (H), (I) and (J)—

*   *   *   *   *   *   *

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

(iii) The amount of deductions of any class to be disallowed under such subparagraphs with respect to any taxable year shall not exceed the amount by which the deductions of such class for such taxable year exceed the deductions of such class for the taxable year for which the tax under this subchapter is being computed.

*ing Co.*, 6 T. C. 1201, 1207. The statute, section 711 (b) (1) (J), provides for two types of abnormal deductions, namely, deductions of a class abnormal to the taxpayer, 711 (b) (1) (J) (i), and deductions of the taxpayer abnormal in amount, 711 (b) (1) (J) (ii). Our problem relates to deductions abnormal in amount, and as to this type of abnormal deduction the statute provides that the abnormality is that amount of the deduction in the base period year which is in excess of 125 per cent of the average amount of deductions of such class for the four previous taxable years.

Our findings show petitioner's deductions for four years prior to the first base period year with respect to dues and subscription payments, but the findings with respect to unemployment compensation payments start with 1936, as the effective date of the unemployment compensation act was January 1, 1936, and there were no payments for any year prior thereto. Determining the amount of the excess deductions for each of the base period years is a mathematical calculation, which we have checked for accuracy. The next step, after determining the amount of the excess, is to apply the limitation contained in section 711 (b) (1) (K) (iii). This subparagraph bars the use of the excess in computing petitioner's excess profits credit, if the excess profits tax year deduction exceeds the deduction for the taxable year in the base period.ª And even though taxpayer's base period year deduction exceeds 125 per cent of the average of the four previous years, this excess can not be used as an abnormal deduction unless the deduction for the excess profits tax year is also less than 125 per cent of the average of the four previous taxable years.ᵇ If the deduction for the excess profits tax year is more than 125 per cent of the average of the four previous taxable years but less than the deduction for the taxable year, then the excess is limited to the difference between the taxable year deduction and the excess profits tax year deduction.ᶜ In determining the amount of petitioner's abnormal deductions for the base period years with respect to the excess profits tax years 1940 through 1943 (the excess profits tax years 1942 and 1943 are involved here by virtue of the excess profits credit carryback provisions) we have followed the method above outlined. For example:

| Taxable year in base period | 125% of average of 4 previous years | Excess profits tax year | Excess amount to be disallowed |
|---|---|---|---|
| ª $800 | $1,400 | $1,000 | None |
| ᵇ 1,400 | 1,000 | 800 | $400 |
| ᶜ 1,400 | 800 | 1,000 | 400 |

The amounts so determined are to be eliminated from petitioner's deductions for base period years in computing its credit for excess

profits tax purposes in 1940 through 1943 unless petitioner has failed to meet the requirements set forth in section 711 (b) (1) (K) (ii). This section requires petitioner to establish that the abnormality or excess must not be a consequence of an increase in its gross income in the base period or a decrease in the amount of some other deduction. In *William Leveen Corporation*, 3 T. C. 593, 595, we pointed out that perhaps the best method of establishing that the abnormal deduction was not a consequence of an increase in gross income was to prove affirmatively that the excess was a consequence of something other than an increase in gross income and could not be identified therewith. Petitioner here has established, and we have found as a fact, that the abnormal deductions in the base period years with respect to unemployment compensation payments and dues and subscription payments were due to a reduction in rates subsequent to the base period. The inference we draw from the rate reductions and the other facts and circumstances is that the abnormal deductions can not be identified with any increase in petitioner's gross income during the base period.

Section 711 (b) (1) (K) (ii) also requires petitioner to establish that the abnormal deduction is not a consequence of a decrease in the amount of some other deduction. Respondent argues in this case, as he has in other cases, that unemployment compensation payments should be classified with other deductible taxes and the excess, if any, disallowed only if the petitioner establishes that the excess tax deduction was not a consequence of the decrease in amount of some other deduction in the base period years. In *Wentworth Manufacturing Co., supra*, we considered unemployment compensation payments under the statutes of Illinois. We there held that the excessive deduction should be disallowed. The situation here is comparable to that existing in the *Wentworth* case and, upon the authority of that decision, we reject respondent's contention that unemployment compensation payments should be classified with other deductible taxes. In all other respects this record and the existing facts support the conclusion that the abnormal deductions were not a consequence of a decrease in any other deduction during the base period years.

Finally, section 711 (b) (1) (K) (ii) requires petitioner to establish that the abnormal deductions are not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by it. This record shows that petitioner continued throughout the base period to manufacture hardwood flooring. It absorbed no other companies. It made no departure from its customary method of operating. Its size did not vary. Its business, based on footage of lumber consumed, showed a gradual increase, but no phenominal growth. In our opinion petitioner has sustained its burden and is entitled to disallow the excess deductions shown in our

findings in computing its excess profits credit for the excess profits tax years involved herein.

Petitioner also claimed that it had established its right to disallow excess interest deductions in the base period years. The proof is not convincing, however, that the excess interest deductions were not a consequence of an increase in petitioner's gross income during the base period years. Petitioner's 1940 tax return shows normal tax income or special class income for each of the base period years, but it fails to show the gross income for any base period year. There is no affirmative proof here which shows the abnormal interest deductions were due to some cause other than an increase in gross income. *William Leveen Corporation, supra.* In the absence of proof establishing that the abnormal interest deductions were not a consequence of an increase in gross income during the base period years, we affirm respondent's determination with respect to the excess interest deductions.

The final issue is the amount of unused excess profits credit carry-back petitioner is entitled to in computing its 1941 excess profits tax liability. The parties have stipulated that petitioner is entitled to a carry-back credit of at least $15,748.79, plus any increase that results from our determination of the other issues herein. Our decision as to the amount of petitioner's abnormal deductions during the base period years will affect the amount of petitioner's excess profits tax liability for the taxable years 1940 and 1941. And, since we have to determine the amount of petitioner's excess profits credit carry-back from 1943 to 1941, our decision as to abnormal deductions in the base period years will also affect the taxable years 1942 and 1943, which are involved herein only in so far as it is necessary to determine petitioner's excess profits credit carry-back.

After making the adjustments required by our holdings, the petitioner's excess profits carry-back credit for 1943 should be redetermined and the amount thereof used in determining petitioner's excess profits tax liability for 1941. Whether deficiencies or overpayments in income and excess profits taxes for 1940 and 1941 will result from our determination of the issues decided herein will have to await recomputation under Rule 50.

*Decision will be entered under Rule 50.*