THE R. H. Bogle Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 12664.    Promulgated June 30, 1948.

John C. Ristine, Esq., for the petitioner.
E. M. Woolf, Esq., for the respondent.

## OPINION.

VAN FOSSAN, *Judge*: Simply stated, the issue is whether or not the petitioner's election to report its gain on the sale of its Memphis property on the installment basis, as permitted by section 44 (b)[1] serves

---

[1] SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year

to deny it relief under the provisions of section 721.[2]  The narrow question is whether or not the income therefrom was abnormal and attributable to the year 1941.

We have found no case precisely in point.  Both the petitioner and the respondent argue by analogy, but each case cited by either has distinctive factual elements of difference which distinguish it from the situation existing in the case at bar.  Perhaps the case most similar is the recent decision of the Supreme Court in *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496.  In that case, the relief was sought

which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section.  As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

*   *   *   *   *   *   *

[2] SEC. 721.  ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income :

*   *   *   *   *   *   *

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary.  In the case of amounts otherwise attributable to future taxable years, if the taxpayer either transfers substantially all its properties or distributes any property in complete liquidation, then there shall be attributable to the first taxable year in which such transfer or distribution occurs (or if such year is previous to the taxable year in which the abnormal income is includible in gross income, to such latter taxable year) all amounts so attributable to future taxable years not included in the gross income of a previous taxable year.

(c) COMPUTATION OF TAX FOR CURRENT TAXABLE YEAR.—The tax under this subchapter for the taxable year, in which the whole of such abnormal income would without regard to this section be includible, shall not exceed the sum of :

(1) The tax under this subchapter for such taxable year computed without the inclusion in gross income of the portion of the net abnormal income which is attributable to any other taxable year, and

(2) The aggregate of the increase in the tax under this subchapter for the taxable year (computed under paragraph (1) ) and for each previous taxable year which would have resulted if, for each previous taxable year to which any portion of such net abnormal income is attributable, an amount equal to such portion had been included in the gross income for such previous taxable year.

*   *   *   *   *   *   *

through the means of deducting 8 per cent of the taxpayer's invested capital for the taxable year (sec. 714). As a part of that invested capital there were accumulated earnings and profits derived from installment sales which it had elected to report on the installment basis, as provided by section 44. The Court upheld the regulation [3] applicable to the situation, stating:

A Treasury regulation, set out in part below, applicable to both the normal income tax and the excess profits tax, specifically provides that "a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis." Respondent's contention cannot be sustained if this regulation is valid since respondent computed its taxable income from installment sales on the installment or modified cash receipts basis, but reported earnings and profits on another basis, the accrual. Validity of the regulation is therefore the crucial question.

\* \* \* \* \* \* \*

The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received only a small portion of the sales price. Another reason was the difficult and time-consuming effort of appraising the uncertain market value of installment obligations. There is no indication in any of the congressional history, however, that by passage of this law Congress contemplated that those taxpayers, who elected to adopt this accounting method for their own advantage could by this means obtain a further tax advantage denied all other taxpayers, whereby they could, as to the same taxable transaction, report in part on a cash receipts basis and in part on an accrual basis.

We find nothing unreasonable in the regulations here. See *Commissioner* v. *Wheeler*, 324 U. S. 542.

\* \* \* \* \* \* \*

The regulation is valid. The respondent can include in its equity invested capital only that portion of installment payments which it has actually received and on which it has already paid income taxes in the years of receipt.

The petitioner contends that the profit on its installment sale of the Memphis property was realized in 1941 and, therefore, was attributable to that year; although, for income tax purposes, it was reported in the years 1941, 1942, and 1943. In *South Texas Lumber Co., supra*, a parallel argument was advanced. Since the problem here is similar in principle to the one confronting the Supreme Court there, we quote at length as follows:

[3] SEC. 29.115–3 [Regulations 111]. EARNINGS OR PROFITS.—In determining the amount of earnings or profits (whether of the taxable year, or accumulated since February 28, 1913, or accumulated prior to March 1, 1913) due consideration must be given to the facts, and, while mere bookkeeping entries increasing or decreasing surplus will not be conclusive, the amount of the earnings or profits in any case will be dependent upon the method of accounting properly employed in computing net income. For instance, a corporation keeping its books and filing its income tax returns under sections 41, 42, and 43 on the cash receipts and disbursements basis may not use the accrual basis in determining earnings and profits; a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis; \* \* \*

It is argued that notwithstanding what has been said, Congress by enacting § 501 of the 1940 Second Revenue Act, 54 Stat. 974, 1004, 26 U. S. C. § 115 (1), had provided a definition for "earnings and profits" for income tax purposes which includes these unpaid installment obligations and that since this section is also applicable to the excess profits tax provisions, the regulation here conflicts with § 115 (1). There are at least two reasons why we cannot accept this argument. In the first place, neither § 115 (1) nor any other purports to alter the Commissioner's power to promulgate reasonable regulations which require tapayers who adopt the installment basis of accounting to use an accounting method that reflects true income. The hybrid method here urged would not accomplish that result.

In the second place, we cannot accept the respondent's interpretation of § 115 (1). He argues that "earnings and profits" derived from a sale of property are defined in § 115 (1) considered in the light of §§ 111, 112, and 113; that these sections together define such earnings and profits as all gain "realized" in the year of sale and "recognized" under the law applicable to the year of sale; that all the anticipated profits from these installment sales were "realized" when the sales were made because the installment obligations of the purchasers were received by respondent in the year of sale and they must be assumed to have been worth their face value; that they were "recognized" as taxable by § 111 (c), the law applicable in the year of sale; and that consequently, the Commissioner was compelled to accept these lawfully "realized" and "recognized" accumulated profits as "invested capital" for excess profits tax purposes, even though not previously reported as taxable income for either income tax or excess profits tax purposes. Finally respondent contends that § 44 merely conferred upon it a privilege to defer payment of income tax on its tax-"recognized" profits realized from installment sales until these installments were collected.

The congressional reports on § 115 (1) do not provide support for the idea that gains not included in taxable income under the taxpayer's method of accounting may nevertheless be considered "realized" and "recognized" for computing tax adjustments or deductions so long as they might have entered into such computations under a different method of accounting. Furthermore, neither §§ 111, 112, nor 113, require a "recognition" of the full face value of installment paper. It is true that § 111 does provide that gain or loss "realized" from the sale of property shall be measured by the "sum of any money received plus a fair market value of the property (other than money) received" and § 111 (c) provides that the extent of gain or loss shall be "recognized" as determined "under the provisions of section 112." But § 111 (d) provides that nothing in § 111 "shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of any installment payment representing gain or profit in the year in which such payment is received." This means that where a taxpayer has validly reported under § 44, that section, not §§ 111, 112, and 113 prescribes the extent to which receipts from installment sales are "recognized" as taxable and the year in which such receipts are "recognized" in computing taxable income. Section 44, unlike § 111, does not recognize as subject to income tax liability the "market value" of deferred installment obligations. They may never be recognized for tax purposes under § 44 or any other section for they may never be paid, or may be paid only in part. These deferred obligations are recognized and taxable under § 44 only to the extent that they are paid and when they are paid, unless they are sold or transferred before payment. Thus whatever meaning is given to the words "realized" and "recognized" the regulation here considered is not in conflict with §§ 115 (1), 111, 112, and 113.

\* \* \* \* \* \* \*

In the light of the reasoning and principles so set forth, we find that, since the petitioner chose to spread the installment payments received from the Chapman-Duffy Lumber Co. over the three years 1941, 1942, and 1943, it must use the same basis for the computation of its excess profits taxes under the appropriate statutory rules.

We need not decide whether or not the income was abnormal for the year 1941. It must also be attributable to that year. In view of the fact that the gain in controversy was divided and spread over the three years in the petitioner's return of its income, it can not now be reassembled and placed in the year 1941 and thus be attributable to that year. Hence, the petitioner is not entitled to the relief afforded by section 721.

*Decision will be entered under Rule 50.*