334

## Yuba Gardens, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 29189, 30329.   Promulgated September 20, 1951.

*Bayley Kohlmeier, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

336

OPINION.

HARRON, *Judge:* The sole question is whether the petitioner realized in 1942 and 1943 "net abnormal income" in the respective amounts of

$18,485.98 and $9,920.09, which is attributable to other years within the meaning of section 721 (b) of the Code.

The petitioner contends that the above amounts of income were abnormal in size under section 721 (a) (1) and are attributable to years before or after the taxable years. The petitioner contends that this income is attributable to the years that the periodic payments which resulted in the abnormal income became due and payable under the terms of certain land sales contracts. The respondent has determined that the petitioner's entire income for 1942 and 1943 is to be included in its excess profits net income for those years.

Section 721 (a) defines the terms "abnormal income" and "net abnormal income," and the applicable parts of section 721 (a) are set out in the margin.[3] In this proceeding we are not so much concerned with those definitions because the parties have agreed that the amounts of $18,485.98 and $9,920.09 constituted "abnormal income" to the petitioner in 1942 and 1943 respectively. It suffices to say that under section 721 (a) a certain portion of the petitioner's income for the taxable years was "abnormal" in amount. *Lindstedt-Hoffman Co.*, 11 T. C. 584. The amount of gross income derived from the receipt of periodic payments under land sales contracts during each of the taxable years was "in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years." (Section 721 (a) (1)).

It is also necessary under section 721 (b) for the petitioner to show that the "net abnormal income," or some part of it, is properly attributable to other years. *Ripy Bros. Distillers, Inc.*, 11 T. C. 326.

In about 1921, or before, the petitioner subdivided a considerable part of its land holdings. Lots were offered for sale under a "nothing down" periodic payment plan. All of the terms of sale were included in written land contracts. In general, a vendee under a contract was required to begin its payments on the contract price 3 years after the

---

[3] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

\* \* \* \* \* \*

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

date of execution of the contract. Annual payments were to be made in 10 equal installments.

Prior to 1942 a large number of vendees under land contracts had defaulted with respect to their periodic payments. In 1942 and 1943, however, most vendees made their current payments. In addition, the petitioner received during each of the taxable years a substantial number of payments which represented arrearages. The petitioner also received a large number of accelerated payments which were not due until later years unless the vendees elected to anticipate the due dates.

In 1942 and 1943 and in prior years the petitioner kept its books of account and reported its income for income tax purposes on a cash basis of accounting. With respect to the land contract sales, the petitioner did not report taxable income under a particular contract until the periodic payments on the contract price exceeded the petitioner's cost or other basis of the parcel of land covered by the particular contract. See: Kester, Advanced Accounting, 4th ed., p. 499. Thereafter the petitioner reported all amounts received pursuant to that contract as income in the year of receipt.

The petitioner also reported its income under the contracts in the same way in its excess profits tax returns from 1940 (the first year of the excess profits tax) to 1943, inclusive. In each of these years the petitioner did not report any excess profits tax as being due, since it computed its excess profits credits to be in excess of its excess profits net income each year. After the respondent made certain adjustments in the amounts representing excess profits net income and excess profits credits for 1942 and 1943, he determined that the petitioner was liable for excess profits tax in each year, and he determined deficiencies in excess profits tax. The petitioner claimed for the first time in a claim for refund, and later in the petition filed in this Court, that it had the right to attribute to other years some of the income received in the taxable years under the land contracts.

Section 721 (b) of the Code provides that:

* * * The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary.

Pursuant to the above statutory authority, the Commissioner promulgated regulations governing the determination of the amount of "net abnormal income" attributable to other taxable years.

Section 35.721–3 of Regulations 112 is set out, in part, in the margin.[4]

---

[4] SEC. 35.721–3. AMOUNT ATTRIBUTABLE TO OTHER YEARS.—

* * * * * * *

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable

The petitioner asserts that the method it advances for attributing the abnormal income to other years is in harmony with the regulations. It is not entirely clear from the petitioner's arguments on brief whether it would attribute the *income* received in 1942 and 1943 to the years in which the *payments* were due and payable under the contracts, or whether it would attribute *income* to the years in which the *income* would have been realized, after the recovery of cost, if the payments had been made in accordance with the terms of the contracts.

In either event, it appears that the petitioner is endeavoring to attribute "net abnormal income" in the same way as one who follows an accrual basis of accounting. As previously noted, the petitioner is on a cash basis of accounting.

The petitioner in the instant proceeding was not able to elect to report its income from land contracts on an installment basis under section 44 (b). This case differs from the *Bogle* and *South Texas Lumber Co.* cases, *infra*, in this respect. In the first excess profits tax year, 1940, the petitioner reported its income from land contracts under the "recovered cost" method of accounting for excess profits tax purposes. It also reported its income from land contracts under the "recovered cost" method of accounting for income tax purposes. The Commissioner apparently thought that this method of accounting clearly reflected the petitioner's income from land sales, for there is no showing that he directed the petitioner to change this accounting method. Nor is there evidence that the petitioner applied for a change. The "recovered cost" method of accounting is a cash method of accounting.

This Court has had several opportunities to consider cases where the taxpayer, in effect, sought to attribute income in a manner at variance with its established accounting method.

In *E. T. Slider, Inc.*, 5 T. C. 263, the taxpayer received income in 1940 from the proceeds of three insurance policies covering the life of its president. The insured had died in 1939, but payment of the insurance proceeds was held up, pending a claim advanced by his wife and daughter. The claim was settled in 1940, and the proceeds

---

in the light of such events.. To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item. is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.

were paid to the taxpayer in the same year. The taxpayer kept its books and filed its tax returns on an accrual basis.

This Court said, *inter alia:*

The proceeds of the three insurance policies * * * were not accruable as income until 1940. They are, therefore, "attributable" only to the year 1940 and not "to other years."

The taxpayer in *Geyer, Cornell & Newell, Inc.*, 6 T. C. 96, was on the accrual basis. In preparing advertising for a client, the taxpayer incurred about 75 per cent of the related expenses in 1939 and the remaining 25 per cent in 1940. About half of the advertising income was realized in 1939 and the other half in 1940. It was held that the taxpayer could not attribute income realized in 1940 to 1939 in proportion to the amounts expended in each year to produce the income.

In *R. H. Bogle Co.*, 10 T. C. 1282, the taxpayer was on the accrual basis. For income tax purposes it elected under section 44 (b) to report the gain from the sale of real estate in 1941 on the installment basis. In 1942 and 1943, the taxpayer sought to attribute to 1941 income derived from installment payments received in those years. This Court did not permit the taxpayer to make such allocation, holding that the election to spread the income under the installment basis applied to the excess profits tax as well as to the income tax.

Although the facts differed in each of the above proceedings, the conclusions, in effect, were the same. The taxpayer in each was not allowed to attribute income to other years, if in so doing it altered its established method of accounting.

Again, in the instant proceeding a different fact situation is presented, so that neither the *Bogle*, *Geyer*, nor *Slider* cases are precisely in point. However, the problem here is similar in principle to the one present in the above proceedings. Consequently, by analogy, the petitioner in the instant proceeding cannot be permitted to attribute its income on the basis it suggests.

By advancing its plan for the allocation to other years of some of the income realized under the contracts in 1942 and 1943, the petitioner may be suggesting that it is entitled to shift the income to other years under section 42 in order to reflect income clearly. If some income of 1942 and 1943 should be allocated to other years, because some of the payments received in 1942 and 1943 were due in other years, then a similar allocation of income from other years to 1942 and 1943 would have to be made for the same reason, in order to avoid a distortion of income in the taxable years. Section 721, however, does not provide for so extensive an allocation. Nor does the record supply the facts necessary for such an allocation. Yet, if only a partial allocation were made, some income would never be subject to tax. This benefit was never intended. No issue is raised under

section 42, and the petitioner's accounting methods seem adequate and to comply with section 42. Cf. *Geyer, Cornell & Newell, Inc., supra.*

The petitioner was satisfied to take advantage of the "recovered cost" method of accounting prior to 1942. In previous years the amounts received under the contracts were comparatively small and were, no doubt, recoveries of cost and so not taxable. However, in the taxable years involved, a substantial portion of the payments represent receipts above cost and are taxable. It appears that because of the receipt in 1942 and 1943 of payments of arrearages and of amounts due in later years, a larger proportion of the payments in 1942 and 1943 represent income. Under the circumstances, an accrual method of accounting, if the petitioner were on an accrual method of accounting, would now offer a tax advantage. The petitioner seeks to reach this advantage through section 721. However, a taxpayer cannot elect to use one method of accounting in one year in order to secure a tax advantage and then change to another method for the purpose of obtaining a further tax advantage. Cf. *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496.

Moreover, unless a taxpayer secures the consent of the Commissioner, it cannot change its method of accounting for tax purposes. Section 29.41–2 of Regulations 111 promulgated under section 41 of the Code. From the evidence it does not appear that the petitioner applied for a change in its accounting method with respect to the land sales contracts. Its excess profits tax returns for 1942 and 1943 cannot be considered as applications to change the method of reporting income from the land sales contracts because the income under the contracts was reported therein on the same basis ("recovered cost") as in previous returns.

Regulations 112, section 35.721–8 [5] provides for the treatment of abnormal income resulting from a change in a taxpayer's method of accounting, but the regulation is not applicable in this proceeding because the petitioner's problem does not result from a change in accounting method. Here the petitioner is, in effect, seeking to have

---

[5] Section 35.721–8 of Regulations 112 provides as follows:

CHANGE IN ACCOUNTING PERIOD OR METHOD OF ACCOUNTING.—The third class of potentially abnormal income specifically set forth in section 721 (a) (2) is income which is includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's accounting period or method of accounting. This class may include such items of income as are includible in gross income for the taxable year by reason of a change from the installment method to the straight accrual method of accounting, a change in inventory method, or a change from the reserve method to the specific charge-off method for the treatment of bad debts. Items of net abnormal income includible in gross income for the taxable year rather than for a different taxable year by reason of a change from the installment method to the straight accrual method of accounting shall be attributed to the year or years such items accrued. The method of allocating items of net abnormal income includible in gross income for the taxable year rather than for a different year by reason of other changes in accounting method or changes in accounting period is to be determined in each particular case upon consideration of all the facts in the case.

this Court approve a change in its method of reporting income from the land contracts from the cash method to an accrual method for the purpose of attributing income received in the taxable years to other years.

Considering the payments of arrears apart from the accelerated payments, the question arises whether the income resulting from the overdue payments is income "arising out of a claim, award, judgment, or decree." This class of income is specifically described as a class of potentially abnormal income in section 721 (a) (2). The manner in which income of the above class is attributable to other years is set forth in section 35.721–6 of Regulations 112. The pertinent parts of the regulation are set out in the margin.[6] Clearly, the income under consideration does not arise out of an "award, judgment, or decree." The question is whether it is income derived from a claim. Although it does not seem that Congress intended to restrict the meaning of the term "claim" to technical items such as litigated claims, it does appear that something more than an existing right is necessary to come within the intendment of the statute. Since the term is used in connection with "award, judgment, or decree," it appears that at the least the statute requires that there be a bona fide dispute or an asserted demand. Cf. *R. C. Harvey Co.*, 5 T. C. 431.

The petitioner in this proceeding had a right under the land contracts to receive periodic payments on the dates specified in the various contracts. But the evidence does not show that the petitioner ever undertook to enforce its contract rights or even to make demands that payments be made in accordance with the terms of the contracts. In fact, the record discloses that the petitioner allowed the vendees under the contracts outstanding in 1942 and 1943 to make payments in such amounts and at such times as they were able. It is concluded that the income received under contracts which were in default in 1942 and 1943 is not income arising out of a "claim, award, judgment, or decree" within the purview of section 721 (a) (2).

The petitioner takes the position that the income realized under the contracts in 1942 and 1943 was not intended to be subject to excess

---

[6] SEC. 35.721–6. INCOME ARISING OUT OF A CLAIM, AWARD, JUDGMENT, OR DECREE, OR INTERESTS THEREON.—

\* \* \* \* \* \* \*

In determining the portions of income of the class described which are attributable to other taxable years, due regard shall be given to the nature of the claim upon which the recovery is founded. Allocation will generally be made to the year or years during which occurred the exploitation, removal, or use, as the case may be, of the property right forming the subject matter of the claim, award, judgment, or decree. Thus, in the case of a judgment for infringement of a patent, the number of units produced through the use by the infringer of such patent in the respective years involved shall constitute a proper basis of allocation. Similarly, if the removal of minerals forms the basis of the recovery, the units removed in the respective years shall constitute a proper basis of allocation. The income arising from awards of the Mixed Claims Commission, United States and Germany, to the extent they constitute compensation for past losses, shall be attributed to the years during which such losses occurred.

profits tax. It claims that almost all of the contracts were executed prior to the rearmament and defense program and that Congress intended the excess profits tax to embrace only income resulting from the rearmament program. The respondent contends that the petitioner's increased income in 1942 and 1943 was the result of improved business conditions and hence under the authority of section 30.721–3 of Regulations 112 cannot be attributed to other years. The respondent points to the testimony of the petitioner's president to the effect that payments increased in 1942 and 1943 because of the improved income situation in the section where the petitioner's lands are located.

Merely because certain abnormal income realized in an excess profits tax year has no connection with the rearmament program does not mean it must be excluded from excess profits net income. In both *E. T. Slider, supra,* and *Premier Products Co.,* 2 T. C. 445, the question was whether certain income realized from life insurance proceeds was includible in excess profits net income for the year in which the proceeds were received. The proceeds from the policies were not affected by the rearmament program. Nevertheless, they were held includible in excess profits net income in the year of receipt. The amounts received would have been the same in the absence of a rearmament program. The same holds true in the instant case.

The determination of the respondent is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*